IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH C. GARCIA, <br>    PLAINTIFF, <br><br> V. <br><br> BRYAN COLLIER, <br>    EXECUTIVE DIRECTOR OF TEXAS <br>    DEPARTMENT OF CRIMINAL JUSTICE <br><br> LORIE DAVIS, <br>    DIRECTOR OF THE CORRECTIONAL <br>    INSTITUTIONS DIVISION OF TEXAS <br>    DEPARTMENT OF CRIMINAL JUSTICE <br><br> JAMES L. JONES, <br>    SENIOR WARDEN OF THE HUNTSVILLE UNIT, <br>       AND <br><br> JOHN OR JANE DOES (UNKNOWN <br>    EXECUTIONERS) 1-50, <br><br>    DEFENDANTS. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CASE NO. 4:18-CV-4521 <br><br> **CAPITAL CASE** <br><br> **EXECUTION DATE** <br><br> **DECEMBER 4, 2018** |

**PLAINTIFF'S COMPLAINT FOR EQUITABLE, INJUNCTIVE AND DECLARATORY RELIEF [42 U.S.C. § 1983]**

**NATURE OF ACTION**

1. This action is brought pursuant to 42 U.S.C. § 1983 for violations and threatened violations by the Texas Department of Criminal Justice ("TDCJ") of Plaintiff Joseph Garcia's right to be free from cruel and unusual punishments under

the Eighth Amendment to the United States Constitution, his rights to petition the government for redress of grievances and to be informed about the government's conduct under the First Amendment, his right to due process under the Fourteenth Amendment to the United States Constitution, and his right to equal protection of the laws under the Fourteenth Amendment.

2.This Complaint does not challenge Garcia's underlying capital conviction or sentence of death, nor does it allege that lethal injection as a form of execution is per se unconstitutional. Rather, Garcia challenges the manner and means by which TDCJ intends to execute him on December 4, 2018.

3.Garcia has reason to believe that TDCJ obtained pentobarbital—the drug that TDCJ will use in his execution and uses in all executions—from a compounding pharmacy that has been repeatedly cited for safety and sanitation violations by state and federal regulators, and has been on probation with the Texas State Board of Pharmacy since 2016. Because TDCJ obtained the drug from a source that has repeatedly violated federal and state standards and engages in unsanitary practices, Garcia has real, substantial concerns that the pentobarbital will not be what it purports to be, will be contaminated, or will be otherwise substandard.

4.Garcia seeks equitable, injunctive, and declaratory relief to prevent Defendants from carrying out his execution by using pentobarbital that TDCJ obtained from an unsafe source.

## THE PARTIES

5. Plaintiff Joseph Garcia is a United States citizen and a resident of the State of Texas. He is presently incarcerated and under a sentence of death at the Allan B. Polunsky Unit of the TDCJ in Livingston, Texas (inmate number 00999441). Garcia is scheduled to be executed at 6:00 p.m. CST on December 4, 2018.

6. Defendant Bryan Collier is the Executive Director of TDCJ.

7. Defendant Lorie Davis is the Director of the Correctional Institutions Division of TDCJ.

8. Defendant James L. Jones is the Senior Warden of the Huntsville Unit, where Garcia is scheduled to be executed.

9. Garcia does not know the true names of Does 1-50, but they have or will participate in his execution, by virtue of their roles in ordering, supplying, distributing, transporting, storing, or mixing lethal injection drugs; or preparing, implementing or carrying out the lethal injection. If Garcia discovers the Doe Defendants' true identities, he will amend his complaint accordingly.

10. Because injunctive relief is sought, Defendants are "persons" for purposes of an action under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Defendants are being sued in their official capacities.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights violations), 28 U.S.C. § 1651 (all writs act), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 2202 (injunctive relief).

12. Venue in this Court is proper under 28 U.S.C. § 1391, and this Court has personal jurisdiction over Defendants because the events giving rise to this claim—both executions and the procurement and maintenance of drugs used in the lethal injection process—occur in Huntsville, Texas.

13. As this case involves an actual controversy within this Court's jurisdiction, this Court, under 28 U.S.C. § 2201, has the power to declare the rights and legal relations of the parties herein, and, under 28 U.S.C. § 2202, has the power to grant declaratory relief by all necessary and proper means. This Court also has the authority to grant injunctive relief under 42 U.S.C. § 1983, as this action involves the deprivation of Garcia's constitutional rights under the Eighth and Fourteenth Amendments by Defendants acting under the color of State law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Garcia does not believe that exhaustion is necessary under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, because this suit does not challenge prison conditions, and because there are no available administrative remedies that could address Garcia's claims.

# RELEVANT FACTS

15. Garcia incorporates by reference every statement and allegation set forth throughout this Complaint. Garcia is set to be executed by TDCJ on December 4, 2018 by lethal injection of "100 milliliters of solution containing 5 grams of Pentobarbital." TDCJ Execution Procedure (July 2012) at 8.

## I. Texas is procuring compounded pentobarbital to be used in Garcia's execution from a compounding pharmacy that regulators have repeatedly cited for dangerous practices.

16. In September 2013, TDCJ began purchasing and using compounded pentobarbital, instead of manufactured pentobarbital, to carry out its executions.

17. At approximately 4:30 p.m. CST on November 28, 2018, Garcia learned from a news article that TDCJ has for the last three and half years procured the drugs it uses to carry out lethal injections from a compounding pharmacy that regulators have repeatedly cited for dangerous practices. *See* Chris McDaniel, *Inmates Said The Drug Burned As They Died. This Is How Texas Gets Its Execution Drugs*, BuzzFeed News, Nov. 28, 2018.[1]

18. Reporter McDaniel identified Greenpark Compounding Pharmacy in Houston ("Greenpark") through investigation, tying the pharmacy to a declaration submitted to the United States District Court for the Southern District of Texas,

---

[1] Available at https://www.buzzfeednews.com/article/chrismcdaniel/inmates-said-the-drug-burned-as-they-died-this-is-how-texas.

Houston Division under the pseudonym Pharmacy X. In the declaration, Greenpark averred that it "has supplied lethal injection chemicals to the Texas Department of Criminal Justice for use in executions of death row inmates." Greenpark stated that its decision to supply lethal-injection chemicals "was and is" contingent on its identity remaining a secret, and that it would end its business with TDCJ if its identity were revealed.

19. Greenpark has been cited for safety violations in recent years, related to its compounding practices, and the Texas State Board of Pharmacy ("TBP") has held its license in a probationary status since November of 2016.

20. TBP also issued several Warning Notices to Greenpark for violations of rules governing practices for producing sterile drug products.

21. As part of its inspection of Greenpark's Houston facilities, TBP noted additional failures on its Inspection Report Checklist, including the temperature of its cleanroom and failure to ensure that antiseptic hand cleansing is performed.

22. TBP issued two Warning Notices to Greenpark on June 23, 2015, for the "failure to remove and quarantine out of date drugs from dispensing stock until drugs can be destroyed properly," and the failure to have all supervising personnel involved in compounding sterile preparations do gloved fingertip and media-fill challenge tests.

23. Greenpark also received two Warning Notices from TBP on May 1,

2014, for the failure "to weigh/mix chemicals in at least ISO 8 air quality," for which it was ordered to "[c]ease this practice <u>now</u> and comply," and the failure to indicate beyond use dates ("BUDs") on prescription labels.

24. Greenpark also was in violation for, inter alia, failing to calibrate and verify the accuracy of its automated compounding device and was ordered to have it removed, replaced, or repaired immediately.

25. On October 26, 2018, the U.S. Food and Drug Administration ("FDA") issued a Warning Letter to Greenpark. From October 16, 2017 to October 27, 2017, an FDA investigator inspected Greenpark's facilities in Houston and noted serious deficiencies in their practices for producing sterile drug products that put patients at risk.

26. The FDA investigator noted that drug products intended or expected to be sterile were prepared, packed, or held under insanitary conditions, whereby they may have become contaminated with filth or rendered injurious to health, causing Greenpark's drug products to be adulterated according to statute.

27. The use of compounded pentobarbital from a suspect source, that is stored in unknown conditions and handled, prepared and administered without adequate safeguards, creates a substantial, demonstrated risk of severe pain at the time of execution.

28. Substandard compounded pentobarbital has a risk of forming visible,

solid precipitate. Visible chemical precipitates, when injected into the vasculature, can travel rapidly through the circulatory system to the heart and into the pulmonary capillary vasculature. Given the size of the particles, they could occlude these capillaries and lead to rupture and hemorrhage of blood into the lungs. This is clinically referred to as pulmonary embolus and pulmonary hemorrhage. A person experiencing this condition is substantially likely to feel extraordinary physical pain.

29. Impurities or particulates in the injectable solution would lead to extreme venous irritation. Chemical imbalances in compounded pentobarbital leading to pH levels outside human blood parameters would also cause extreme pain upon injection. Moreover, the administration of sub-potent drugs, such as those used after their BUDs could also prolong the procedure and lead to suffering at the time of an execution.

## II. TDCJ has gone to great lengths to maintain secrecy around the source of its pentobarbital and prevent Garcia from learning the source of the drug it intends to use to execute him.

30. In the past few years, TDCJ has refused to disclose information about its drug source and has taken steps to prevent condemned prisoners, including Garcia, from learning information about the drugs' provenance, quality, and handling.

31. Given the information learned about Greenpark and the substantial concerns that raises, Garcia's counsel sent a letter to Lorie Davis, Director of the

Correctional Institutions Division of TDCJ, on November 28, 2018, the same day the facts discussed above became known to Garcia, requesting a notice of the source from which TDCJ has acquired or intends to acquire the pentobarbital or any related chemical that it intends to use in Garcia's execution. Garcia's counsel has received no response.

32. TDCJ's steadfast secrecy around the source of its pentobarbital has prevented Garcia from determining whether the drug it uses are degraded or contaminated, which would cause intolerable pain.

33. The lack of transparency has impeded Garcia's ability to exercise his constitutional right not to be put to death by in a manner that presents a risk that is very likely to cause serious illness and needless suffering.

## CLAIMS FOR RELIEF

## CLAIM ONE

**Defendants' use of compounded pentobarbital from a pharmacy that has a history of compounding unsafe drugs demonstrates deliberate indifference to Garcia's right to be free from cruel and unusual punishment; simultaneously, the use of the compounded pentobarbital creates a substantial risk of serious harm, violating Garcia's right to be free from cruel and unusual punishment.**

34. Garcia incorporates by reference every statement and allegation set forth throughout this Complaint.

35. On information and belief, Defendants intend to execute Garcia with pentobarbital compounded by Greenpark, a source that has been repeatedly cited for

9

safety and sanitation violations by state and federal regulators, and has its license on probationary status. Defendants know or should know the risks involved in procuring and administering a compounded drug from a source with a documented history of producing substandard, faulty products that have harmed people.

36. State actors who knowingly permit the administration of and who administer pentobarbital from a source that has been repeatedly cited for safety and sanitation violations by state and federal regulators and that has its license on probationary status because of bad practices, are acting with deliberate indifference to Garcia's right to be free from cruel and unusual punishment.

37. Defendants' use of pentobarbital from Greenpark also creates a substantial risk of serious harm during Garcia's execution, thereby depriving Garcia of his right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishments. This substantial risk of serious harm is unnecessary, given that TDCJ can procure pentobarbital from a different, reputable source.

38. Garcia is not challenging the use of compounded pentobarbital in his execution. Rather he is challenging the use of compounded pentobarbital sourced from Greenpark. For this reason, he need not plead an alternative method of execution.

39. Assuming arguendo that Garcia must plead an alternative, there is a

feasible and readily available alternative: source the execution drug from one of the other hundreds of sterile compounding pharmacies licensed in Texas that is not on probationary status and does not have safety citations.

## CLAIM TWO

**By deliberately concealing necessary information from Garcia, Defendants have violated his First Amendment right to be informed about the manner in which the State implements the most serious penalty available in the criminal-justice system.**

40. Garcia incorporates by reference every statement and allegation set forth throughout this Complaint.

41. Defendants have failed to provide Garcia with the necessary information to determine how the State intends to carry out his death sentence, including information relating to the safety and provenance of the lethal-injection drugs TDCJ intends to use to execute him, and the safety record and licensure status of the drug's unreliable and potentially dangerous source.

42. Defendants' deliberate concealment of this information demonstrates a lack of transparency and reliability in its intended manner of executing Garcia.

43. Garcia is an "individual citizen" with a First Amendment right of access to governmental proceedings; he is also a prisoner who retains his First Amendment rights absent deprivation procedures that meet due-process requirements. A prisoner retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.

44. The First Amendment right to petition the government for redress of grievances includes the right of access to the courts and protects the right of the People to know their government acts fairly, lawfully and accurately.

45. The right of access to the courts is especially critical for prisoners because their access to other remedies is limited.

46. State action that denies a plaintiff the opportunity to litigate gives rise to a claim that the State is violating the plaintiff's right of access to the courts.

47. The right of access to the courts is an ancillary claim, which is necessary for the vindication of underlying rights.

48. By deliberately concealing information about the drug that the State intends to use to execute Garcia, Defendants have erected a condition that frustrates Garcia's ability to litigate his claims relating to the constitutionality of his execution. This condition deprives Garcia of his First Amendment rights to petition the government for redress of grievances and of access to governmental proceedings.

## CLAIM THREE

**Defendants' deliberate actions in hiding information regarding the source of the pentobarbital that they intend to use to execute Garcia denies him of his federal rights to due process and meaningful access to the courts.**

49. Garcia incorporates by reference every statement and allegation set forth throughout this Complaint.

50. By failing to provide Garcia with notice and relevant information

regarding the source of the pentobarbital TDCJ intends to use in his execution, Defendants are violating Garcia's right to due process under the Fourteenth Amendment to the U.S. Constitution.

51. Garcia has a liberty interest in assuring that his executions are carried out in a manner consistent with the Eighth Amendment.

52. Defendants' deliberate concealment deprives Garcia of his ability to determine whether the State is capable of carrying out his executions in a lawful, constitutional manner. They have actively prevented him from successfully vindicating his Eighth Amendment rights.

53. Therefore, Defendants' actions have violated Garcia's rights to due process and access to the courts.

## CLAIM FOUR

**Defendants' actions violate Garcia's right to equal protection under the law pursuant to the Fourteenth Amendment.**

54. Garcia incorporates by reference every statement and allegation set forth throughout this Complaint.

55. Under the Equal Protection Clause, the government cannot make distinctions that burden a fundamental right, target a suspect class, or intentionally treat one person differently from others similarly situated without any rational basis for the difference.

56. On information and belief, other similarly situated condemned

prisoners executed by Defendants were injected with pentobarbital compounded by a pharmacy or pharmacies that were not on probationary status or did not have the litany of safety violations of Greenpark.

57. Defendants' use of pentobarbital compounded by Greenpark to execute Garcia constitutes disparate treatment. There is no rational basis to use pentobarbital compounded by Greenpark—as opposed other sterile compounding pharmacies—in Garcia's execution, and this also subjects Garcia to substantial risk of serious harm.

58. In addition, on information and belief, Defendants have not—and will not—test the compounded pentobarbital to be used in Garcia's execution in the days leading up to the December 4, 2018 execution and ensure the drug is safe for use.

59. Defendants agreed to test the compounded pentobarbital intended for use in the executions of Thomas Whitaker and Perry Williams for potency, purity and sterility shortly before those executions.

60. Whitaker and Williams were condemned prisoners similarly situated to Garcia.

61. The failure of Defendants to test the pentobarbital compounded for Garcia's execution shortly before his execution to ensure the pentobarbital is safe for use is disparate treatment that burdens Garcia's fundamental Eighth Amendment rights, putting him at substantial risk for serious harm. The refusal to perform such testing also has no rational basis, since Defendants have shown the testing can be


prisoners executed by Defendants were injected with pentobarbital compounded by a pharmacy or pharmacies that were not on probationary status or did not have the litany of safety violations of Greenpark.

57. Defendants' use of pentobarbital compounded by Greenpark to execute Garcia constitutes disparate treatment. There is no rational basis to use pentobarbital compounded by Greenpark—as opposed other sterile compounding pharmacies—in Garcia's execution, and this also subjects Garcia to substantial risk of serious harm.

58. In addition, on information and belief, Defendants have not—and will not—test the compounded pentobarbital to be used in Garcia's execution in the days leading up to the December 4, 2018 execution and ensure the drug is safe for use.

59. Defendants agreed to test the compounded pentobarbital intended for use in the executions of Thomas Whitaker and Perry Williams for potency, purity and sterility shortly before those executions.

60. Whitaker and Williams were condemned prisoners similarly situated to Garcia.

61. The failure of Defendants to test the pentobarbital compounded for Garcia's execution shortly before his execution to ensure the pentobarbital is safe for use is disparate treatment that burdens Garcia's fundamental Eighth Amendment rights, putting him at substantial risk for serious harm. The refusal to perform such testing also has no rational basis, since Defendants have shown the testing can be

readily and easily be performed.

62. Defendants' failure to adhere to critical terms of the execution procedure, like the concentration of the execution drug, creates a substantial risk of serious harm to Garcia as compared to the similarly situated condemned prisoners.

63 TDCJ's execution procedure requires the use of "100 milliliters of solution containing 5 grams of Pentobarbital," which translates to a solution concentration of 50mg/mL.

64. On information and belief, in some of the executions in 2017 and 2018, Defendants used a solution of pentobarbital at a concentration of 100 mg/mL, in violation of the execution procedure.

65. Defendants have consistently, but also arbitrarily, deviated from TDCJ's execution procedure, treating similarly situated condemned prisoners disparately for no rational reason.

66. Defendants' disparate treatment of Garcia from similarly situated condemned prisoners is without rational basis and burdens his fundamental Eighth Amendment right to an execution that is not cruel or unusual.

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Garcia prays for:

(1) Temporary, preliminary, and permanent injunctive relief to enjoin the defendants, their officers, agents, servants, employees, and all persons acting in concert with them from executing Garcia with compounded Pentobarbital from Greenpark or any other compounding pharmacy with substandard sanitation practices cited by state or federal regulators;

(2) A declaratory judgment that TDCJ's current plan to execute Garcia by using compounded Pentobarbital from Greenpark violates his rights under the Eighth Amendment of the United States Constitution; that TDCJ's failure to provide Garcia adequate notice regarding the acquisition of the compounded Pentobarbital it intends to use in his execution violates his rights under the Due Process clause of the Fourteenth Amendment; the Equal Protection Clause of the Fourteenth Amendment, and the First Amendment; that that the State's failure to provide Garcia with the equal treatment under the law violates the Equal Protection Clause of the Fourteenth Amendment; and that TDCJ's administration of compounded Pentobarbital from Greenpark demonstrates deliberate indifference to Garcia's right to be free from cruel and unusual punishment;

(3) Temporary, preliminary, and permanent injunctive relief to enjoin the Defendants, their officers, agents, servants, employees, and all persons acting in concert with them from concealing information that is not related to the identification of persons participating in execution, and that is necessary to ensuring Garcia's Eighth Amendment right to be free from cruel and unusual punishment, Fourteenth Amendment right to equal protection of the laws, First Amendment rights to petition the government for redress of grievances and to access government proceedings, and his Fourteenth Amendment right to due process;

(4) A stay of Garcia's execution;

(5) Appropriate and necessary discovery and an evidentiary hearing to allow Garcia to prove his constitutional claims;

(6) Costs of the suit; and

(7) Any such other relief as the Court deems necessary and proper.

Respectfully submitted this 30th day of November, 2018.

                Jon M. Sands
                Federal Public Defender
                District of Arizona

                Dale A. Baich
                Jessica L. Felker

                <u>s/ Jessica L. Felker</u>
                Attorney-in-charge
                IL Bar No. 6296357
                *Pending Pro Hac Vice Application*
                850 West Adams St., Suite 201
                Phoenix, AZ 85007
                (602) 382-2816
                Jessica_Felker@fd.org