IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH C. GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-4521 |
| | § | |
| BRYAN COLLIER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Plaintiff Joseph C. Garcia is a Texas death row inmate. The defendants are officials, employees, and agents of the Texas Department of Criminal Justice ("TDCJ"). Garcia is scheduled for execution on December 4, 2018.

On Friday night November 30, 2018, Garcia filed a complaint under 42 U.S.C. § 1983 alleging that his upcoming execution violates his rights under the First, Eighth and Fourteenth Amendments. He seeks a preliminary injunction staying his execution to allow him time to fully litigate his claims. For the following reasons, Garcia's motion for a preliminary injunction is denied.

**I.     Background**

Garcia alleges that the State of Texas intends to execute him using the drug pentobarbitol that it obtained from a compounding pharmacy in Houston. He alleges that this pharmacy has been "repeatedly cited for dangerous practices" by regulators. Garcia contends that:

    (1)    the use of drugs from this pharmacy constitutes deliberate indifference to his right to be free from cruel and unusual punishment;

    (2)    TDCJ's secrecy regarding the source of its execution drugs violates his First Amendment right to be informed about the manner in which he will be executed;

    (3)    TDCJ's secrecy violates his rights to due process and meaningful access to the courts; and

    (4)    the defendants' alleged actions violate his right to equal protection of the law.

He seeks declaratory and injunctive relief, including a preliminary injunction staying his execution.

## II.   Analysis

### A.   The Preliminary Injunction Standard

There are four prerequisites for the extraordinary relief of a preliminary injunction. A court may grant a preliminary injunction only when the movant establishes that: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest. *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir.1987) (citing *Canal Auth. of the State of Florida v. Callaway,* 489

F.2d 567, 572 (5th Cir.1974) (en banc)). The party seeking injunctive relief must prove each of the four elements before a preliminary injunction can be granted. *Mississippi Power & Light Co. v. United Gas Pipeline,* 760 F.2d 618, 621 (5th Cir.1985); *Clark,* 812 F.2d at 993.

Because a preliminary injunction is considered an "extraordinary and drastic remedy," it is not granted routinely, "but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985). The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Mississippi Power & Light Co.,* 760 F.2d at 621. Even when a movant establishes each of the four *Canal* requirements, the decision whether to grant or deny a preliminary injunction remains discretionary with the court, and the decision to grant a preliminary injunction is treated as the exception rather than the rule. *Mississippi Power & Light,* 760 F.2d at 621. The same standards apply to stay requests. *See*, *e.g.*, *Nken v. Holder*, 556 U.S. 418, 434 (2009).

**B.     Likelihood of Success on the Merits**

1.     Deliberate Indifference

Garcia argues that the use of pentobarbitol from this particular compounding pharmacy demonstrates deliberate indifference to a risk that he will suffer serious pain because of the pharmacy's alleged record of safety violations. "Deliberate indifference" is more than mere negligence, *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976), but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm

will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Rather, deliberate indifference requires that the defendants be subjectively aware of a substantial risk of serious harm to the inmate and recklessly disregard that risk. *Id.* at 829, 836.

To prevail, Garcia must demonstrate that there is "a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were "subjectively blameless for purposes of the Eighth Amendment.'" *Baze v. Rees*, 553 U.S. 35, 50 (2008) (quoting *Farmer,* 511 U.S. at 842, 846, and n. 9). "Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of "objectively intolerable risk of harm" that qualifies as cruel and unusual." *Baze*, 553 U.S. at 50.

Garcia acknowledges in his complaint that TDCJ has been purchasing pentobarbitol from this pharmacy for approximately three and a half years. Garcia does not give an exact date when TDCJ began purchasing from this pharmacy, but Texas has executed 32 inmates in the 42 months immediately preceding Garcia's scheduled execution. *See* www.tdcj.state.tx.us/death_row/dr_executed_offenders.html. Garcia's only evidence that the drug might cause pain is an article from Buzzfeed News quoting inmates as stating that they experienced a burning sensation when the pentobarbitol was administered. Motion for Preliminary Injunction (Docket Entry 4), Exh. C.

At most, Garcia points to anecdotal evidence that some inmates experienced some pain during their executions. The Constitution, however, does not require a pain free

4

execution. *See*, *e.g.*, *In re Ohio Execution Protocol*, 860 F.3d 881, 890 (6th Cir. 2017); *Bible v. Davis*, No. 4:18-CV-1893, 2018 WL 3068804, at *8 (S.D. Tex. June 21, 2018), *aff'd*, 739 F. App'x 766 (5th Cir. 2018). The absence of evidence that inmates suffered an unconstitutionally excessive level of pain in the nearly three dozen executions carried out by Texas during the time it has allegedly purchased pentobarbitol from this pharmacy establishes that the defendants are not disregarding a serious risk that the drug will cause Garcia undue suffering, but merely a hypothetical risk that it will do so.

The hypothetical nature of Garcia's claims is highlighted by his lack of argument that the burning sensation identified in the Buzzfeed article is unconstitutional. Instead, Garcia speculates that tainted or improperly formulated pentibarbitol could cause the formation of precipitate which could cause blood vessels to rupture and hemorrhage into the lungs. *See* Motion for Preliminary Injunction at 21-22. He cites no evidence that this has happened in any of the 32 executions carried out since TDCJ allegedly began purchasing drugs from this pharmacy.

Moreover, to successfully challenge Texas' method of execution, Garcia must show not only that the use of the compounded pentobarbitol carries a demonstrated risk of causing severe pain, he must also show that the risk is substantial when compared to the known and available alternatives. *Glossip v. Gross*, 135 S.Ct. 2726, 2737 (2015). As noted above, Garcia does not show that the use of the compounded pentobarbitol from this pharmacy carries a demonstrated risk of severe pain. His only attempt to identify an alternative is his

conclusory allegation that Texas can source the drug from another pharmacy. He does not, however, identify any other pharmacy willing and able to provide execution drugs to TDCJ. Thus, while Garcia identifies a known alternative drug, he does not identify an available one. He is unlikely to succeed on the merits of this claim.

    2.    <u>Secrecy</u>

Garcia next argues that TDCJ's secrecy regarding the source of pentobarbitol violates his First Amendment right to be informed about the manner of his execution, and his right to due process and meaningful access to the courts. Prisoners have a First Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Garcia complains that secrecy regarding the source of the pentobarbitol that will be used to execute him violates this right by making it difficult for him to learn exactly how he will be executed, and to litigate claims relating to his execution.

To prevail on his access to the courts claim, Garcia must "show a potential Eighth Amendment violation. One is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation." *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013). As noted above, Garcia has failed to demonstrate anything more than a hypothetical possibility of an Eighth Amendment violation. He therefore fails to satisfy a necessary precondition of his access to the courts claim, and is unlikely to succeed on the merits of that claim.

Garcia's claim that he has either a due process or First Amendment right to highly specific information about the drug's manufacturing process is also dependent on the existence of a valid underlying Eighth Amendment claim.

> Even if the Fourteenth Amendment sometimes protects liberty interests not explicitly enumerated in the Constitution, we know of no case, in the context of executions, in which the Supreme Court has found a liberty interest to exist, based on the contours of the Eighth Amendment, that goes beyond what that Amendment itself protects.

*Id.* Therefore, Garcia is unlikely to prevail on his claims related to TDCJ's alleged secrecy regarding the source of the execution drug.

### 3. Equal Protection

Finally, Garcia argues that the use of pentobarbitol from this particular compounding pharmacy violates his right to equal protection because other condemned inmates were executed with drugs obtained from pharmacies that did not have the record of regulatory violations alleged here. He contends that this constitutes disparate treatment in violation of the Fourteenth Amendment.

It is beyond dispute that pentobarbitol is routinely used in executions, and that such use is constitutional. *See, e.g.*, *Whitaker v. Collier*, 862 F.3d 490, 499 (5th Cir. 2017); *Raby v. Livingston*, 600 F.3d 552, 555-56 (5th Cir. 2010). Moreover, using pentobarbitol obtained from a compounding pharmacy does not implicate the Eighth Amendment. *Whitaker*, 862 F.3d at 498-99. Garcia's disparate treatment claim thus rests on his contention that the drug

obtained from *this* pharmacy carries an unconstitutional risk of causing undue pain that would not be present if TDCJ used pentobarbitol obtained from another pharmacy. However, as discussed above, that claim is entirely speculative. Garcia thus fails to demonstrate that he is subject to disparate treatment, and is unlikely to succeed on the merits of this claim.

### III. Conclusion

Because Garcia is unlikely to succeed on the merits of any of his claims, he is not entitled to a preliminary injunction or a stay of execution.

### IV. Order

Garcia's motion for a preliminary injunction (Docket Entry 4) is **Denied**.

Signed at Houston, Texas on December 1, 2018.

_____
Gray H. Miller
United States District Judge